## Henry Marsh *versus* Benjamn M. Flint.

Logs owned by one person cannot be seized, libelled and sold, under Rev. St. c. 67, § 9, to pay not only the expense incurred in driving them, but also the expenses incurred in driving, at the same time, the logs owned by another person. If the owner cannot be ascertained, the whole of the logs on which the expense has been incurred, and not a selected portion of them, is to be seized and libelled, so that each person, interested may have an opportunity to appear and claim his proportion of the property owned by him in severalty. Therefore, when different lots of logs, designated by different marks, appear by the libel to have been driven together, and when a portion only of them appears to have been seized and libelled, without any designation of the lot, or lots, from which it was selected, to pay the whole expense incurred, such libel, on demurrer thereto, cannot be sustained.

The libel is bad, on demurrer thereto, if it be alleged therein, merely, " that the owners of said marks of logs, at the time of their driving, and then and ever since, to the proponent are unknown," when the statute permits, a libel thereof only when " the owner of such logs *cannot be ascertained*."

The libel is also bad, on demurrer, if there be an omission to allege therein in substance, that the libellant had caused " an inventory and appraisement of the same to be made by three disinterested persons, under oath, appointed by a *justice of the same county*," as required by Revised Statutes, c. 132, § 4.

A libel, of which a copy follows, was filed at the September Term, 1846, of the Eastern District Court: —

" To the Honorable the District Court for the Eastern District, next to be holden at Machias within and for the county of Washington, on the third Tuesday of September, A. D. 1846: —

" The libel and complaint of Henry Marsh, of St. Stephen, New Brunswick, lumberman, informs and gives the Honorable Court to understand that the proponent at a certain place unincorporated in said county, called Big Musquash stream, on

the twelfth day of June, A. D. 1846, was the owner and possessor of a certain quantity of pine and spruce mill logs, marked thus : — 'I ! ME. to wit : — eight hundred thousand board measure, then and there situate, for the purpose of being floated and driven to market or place of manufacture, to wit : — Vance's Boom, Baring, which logs of the proponent's then and there became and were so intermingled, and mixed with a certain other quantity of pine and spruce mill logs, to wit : — three hundred thousand feet, board measure, called the C. R. W. and marked thus C. R. W. one hundred and thirteen thousand feet board measure, marked thus | X | two hundred and fifty thousand feet board measure, marked thus X P. that the proponent could not drive and float his own logs towards the market and place of manufacture without the aforesaid marks.

"And the proponent avers, that he did drive his own logs and the mark aforesaid, and did expend in money the sum of seventy-nine dollars and sixty-three cents, in and upon the aforesaid marks of logs, in addition to, and over and above the expense of driving his own logs, for which he deserves to have by force of the statute in such case made and provided, a reasonable compensation, and that the sum aforesaid is but a reasonable sum by him so unavoidably expended upon the aforesaid marks of logs in driving his own.

"And proponent further gives the Honorable Court to understand, that no provision exists by law, and neither was any made to drive the aforesaid marks of logs upon said Big Musquash, towards the place of market and manufacture.

"That the owners of said marks of logs at the time of their driving, and then and ever since, to the proponent are unknown.

"That on the fifth day of August, A. D. 1846, at Calais, in said county, the proponent seized and took seventy-nine dollars and fity-six cents, being fourteen thousand feet board measure of said marks of logs, and them now detains for payment, for the sum expended in manner and form as aforesaid, and prays this Honorable Court to decree the same forfeit, or

make such other order thereon as to law and justice may appertain. "Henry Marsh, by his attorney, Daniel Tyler.

"Calais, August 5, 1846."

The Court ordered notice returnable at the February Term, 1847, when Benjamin M. Flint entered his appearance, and filed the following claim and demurrer : —

"And now Benjamin M. Flint comes into court, and claims and shows to the court here, that he is the owner and was at the time of the alleged seizure, as set forth in the complainant's libel, of the logs therein mentioned, marked thus 1 X 1, and for plea says, that he ought not to be held any further to answer to the said complaint and libel, because, he says, it is altogether insufficient in law for the said complainant to have and maintain the same ; because said complaint does not state and set forth, when, or where, or how, the said complainant seized said logs, nor how many logs, nor of what marks, nor when or how the said complainant seized said logs, nor how many logs, nor of what marks, nor when or how their value was ascertained, nor that any persons were legally chosen and sworn to appraise the same and estimate the value thereof, as the law requires, nor how far nor from what place, nor to what place he drove said logs, nor that the complainant made any inquiry for or used any diligence to ascertain the owner of said logs, nor does it state, that the said complainant could not ascertain the owner of said logs, nor that thirty days had not expired after said logs arrived at the place of their destination, at the time the said logs were seized by the said complainant ; all of which should have been particularly stated and set forth in said complaint. And because different marks of logs, belonging to different owners, are seized and libelled on this complaint, without designating the number or quantity of any of said different marks of logs. All which the said Flint is ready to verify. Wherefore he prays judgment of the said libel, and that the said mark of logs may be restored to him ; and for his damages for the unlawful detention thereof ; and for his reasonable costs expended in this behalf.

"By his attorney, Joseph Granger."

To this there was a joinder in demurrer by the libellant.

The case was argued by

*Fuller* and *Tyler*, for the libellant — and by

*J. Granger*, for the respondent, Flint.

The opinion of the Court was by

SHEPLEY J. — This libel has been filed by virtue of the statute, c. 67, § 9, which authorizes a person having timber in the waters of this State, so mixed with the timber of another, that it cannot conveniently be separated to be floated to the place of market or manufacture, to drive all the timber so mixed, when no special or different provision therefor is made by law ; and gives him the right to obtain compensation for his services.

The respondent, Benjamin M. Flint, appeared and claimed to be the owner of one lot of the logs designated by a certain mark, and put in an answer and special demurrer to the libel.

The libel alleges in substance, that on June 12, 1846, the logs of the libellant were in the Big Musquash stream, for the purpose of being floated to Vance's boom in the town of Baring ; that they became so mixed with three other lots of logs designated by different marks named, that they could not be driven, without driving those other lots ; and that he caused the whole to be driven ; that no special provision of law for that purpose existed ; that the owners of those lots of logs were at the time, and have since continued to be unknown ; that the libellant on August 5, 1846, caused fourteen thousand feet, board measure, of those logs to be seized and detained for payment of the expenses incurred in driving them.

The libel does not state, that the whole of either lot, or what proportion of either lot was seized, or from what lot or lots the amount seized was selected.

The question therefore arises, whether logs owned by one person may be seized, libelled, and sold, to pay not only the expense incurred in driving them, but also the expenses incurred in driving the logs owned by another person.

A construction of the statute, that would permit this, must

Marsh *v.* Flint.

rest upon the conclusion, that the legislature intended to allow the property of one person to be taken to pay the debt of another. If this were the design it would exhibit an attempt to violate private rights in a manner not permitted by the constitution. Such a construction should not be admitted, if the statute may receive any other reasonable one. So far is the statute from requiring such a construction, that it is apparent, that the legislature had no such intention. The person, who thus causes logs to be floated to the place of manufacture, is entitled to a reasonable compensation, to be recovered from the " owner," by an action on the case, if he be known. If the owner cannot be ascertained, the property may be seized and libelled according to the provisions of chapter 132. But it is the property on which the expense has been incurred, and not other property that may be seized and libelled. The whole of the property according to the provisions of the statutes, and not a selected portion of it, is to be seized and libelled. In such case each person may appear and claim his own proportion of property owned in severalty, and receive it, or so much of it as may not be required to pay the sum expended upon it with costs.

When, by the libel, different lots designated by different marks, appear to have been driven ; and when a portion only of them appears to have been seized and libelled without any designation of the lot or lots, from which it was selected, no sufficient foundation is laid for a decree so framed as to avoid the application of the proceeds of the sale of the property of one man to pay a debt due from another.

The proceedings in this respect appear to have been irregular. The libel also is in this particular defective.

It is defective also, in that it does not allege, that the owner of those logs could not be ascertained.

The statute gives an action on the case against the owner of the logs for the recovery of the amount expended upon them. It permits a recovery thereof by a process against the property only, when " the owner of such logs cannot be ascertained." There is an essential difference between the allegation contain-

ed in the libel, that the owners are unknown, and that required by the statute, that they cannot be ascertained.

The libel is also defective in that it does not allege, that the libellant, after seizure of the property, " caused an inventory and appraisement of the same, to be made by three disinterested persons, under oath, appointed by a justice of the same county," as required by statute, c. 132, § 4. the value thus ascertained is declared by the statute to be " the rule for deciding, where the libel shall be filed." Such inventory and appraisement are necessary also to enable the court to make a correct and just distribution of the proceeds of the sales, and to enable it to ascertain, that all the property has been sold and accounted for by the officer, who executed the *venditione exponas.*

The demurrer is allowed, and the libel is dismissed with costs for the respondent, to whom the property claimed by him is to be restored.